ORDERED.

Dated:  May 31, 2016

_Caryl E. Delano_
Caryl E. Delano
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                                                    Case No. 8:15-bk-05591-RCT

Andrew Paul Goesel,                                                      Chapter 13

　　　Debtor.
_____/

**MEMORANDUM OPINION SUPPLEMENTING
ORDER DENYING MOTION FOR RECONSIDERATION OF ORDER
OVERRULING IN PART OBJECTION TO CLAIM #11 OF CHRISTINE GOESEL**

THIS CASE came on for hearing on April 11, 2016, of Debtor's *Motion for Reconsideration of Order Overruling in Part Objection to Claim #11 of Christine Goesel* (the "Motion").[1] At that hearing, the Court announced its ruling denying the Motion.[2] Thereafter, the Court entered its *Order Denying Motion for Reconsideration of Order on Objection to Claim # 11 of Christine Goesel*.[3] This Memorandum Opinion supplements the Court's oral ruling at the April 11, 2016 hearing.

　　A.　　**Background and Procedural History**

Creditor, Christine Goesel ("Christine"), is Debtor's former spouse. In connection with the dissolution of their marriage, Debtor and Christine entered into a marital settlement agreement (the

---

[1] Doc. No. 32.
[2] Transcript, Doc. No. 54.
[3] Doc. No. 45.

"MSA"). The terms of the MSA were incorporated in a Judgment for Dissolution of Marriage entered by the Circuit Court of the Twelfth Judicial Circuit of Illinois (the "Judgment"). The Judgment expressly "ratified, confirmed, approved, and adopted" the MSA as if it were an order of the court.[4]

The MSA, incorporated by the Judgment, states that during the course of the parties' marriage, they acquired real property in Nokomis, Florida (the "Property"). The parties agreed that Debtor would pay Christine $50,000.00 for her share of the equity in the Property (the "Equalizer Payment") within 30 days. The MSA further provided that if Debtor did not make the Equalizer Payment within 30 days, the Property would be listed for sale and Christine would receive the first $50,000.00 of any net sale proceeds. The MSA expressly provides that Christine's right to payment constitutes a lien on the Property. Specifically, § 8(b) of the MSA states:

> Judgment enters in favor of Wife against Husband in the amount of fifty thousand dollars ($50,000.00) and shall constitute a lien on the aforesaid property until paid with statutory interest as provided herein.[5]

The MSA also required Christine, upon entry of the divorce judgment, to execute a quitclaim deed conveying all her rights, title, and interest in the Property to Debtor. The deed was to be held in escrow until Debtor refinanced the mortgage on the Property and made the $50,000.00 payment to Christine.[6] The parties stipulated that both Debtor and Christine are on title to the Property; that if the Property were sold, there would be sufficient equity in the Property to pay $50,000.00 to Christine; that Debtor has not paid the $50,000.00; and that Christine has executed a quitclaim deed of her interest in the Property that is held in escrow by her attorney.

---

[4] Claim No. 11-2, Part 2, p. 4.
[5] Claim No. 11-2, Part 2, p. 19.
[6] *Id.*

Debtor filed his Chapter 13 case on May 28, 2015. In Debtor's bankruptcy schedules, he listed Christine as a general unsecured creditor for "property settlement/Divorce litigation" in the amount of $85,000.00.[7] Debtor's Chapter 13 plan proposes to pay his unsecured creditors a total of $9,454.64.[8]

Christine filed a proof of claim for $50,000.00 as a secured claim.[9] Debtor objected to the secured status of the claim (the "Objection"), asserting that the debt owed to Christine is not a secured claim, but a general unsecured claim. If the claim is an unsecured claim arising from a property settlement agreement, it is subject to discharge under § 1328(a)(1).[10]

On January 11, 2016, the Court conducted a hearing on the Objection. The Court found that because Christine is on title to the Property, her ownership interest is the functional equivalent of a lien and she therefore holds a secured claim. Thereafter, the Court entered its order overruling Debtor's objection.[11] Debtor timely filed his motion for reconsideration.[12]

**B.    Discussion**

To prevail on a motion for reconsideration, Debtor must demonstrate that the Court committed clear legal error that would result in a manifest injustice, that there has been an intervening change in controlling law, or that new evidence is available that could not have been

---

[7] Doc. No. 1, p. 20.
[8] Doc. No. 2, p. 3.
[9] Claim No. 11.
[10] Doc. No. 27. Under § 523(a)(15), a debt to a spouse incurred in connection with a separation agreement or divorce decree is excepted from discharge. Section 523(a)(15) does not apply to Chapter 13 cases.
[11] Doc. No. 30.
[12] Doc. No. 32.

3

presented prior to the entry of judgment.[13] Here, Debtor asserts that the Court's ruling was clear error.[14]

Debtor contends that under the Florida state court cases of *Dyer v. Beverly & Tittle, P.A.*[15] and *Butler v. Butler*,[16] a marital settlement agreement's provision for a lien securing a debt is insufficient to give rise to an actual judgment lien on property. Debtor argues that in order for the Judgment to give rise to an enforceable lien on the Property, Christine was required to comply with the recording requirements of Fla. Stat. § 55.10. Because Christine did not comply with Fla. Stat. § 55.10, Debtor argues that she does not have a lien on the Property and holds only an unsecured claim.

*Dyer* was a divorce action where the wife obtained final judgments for attorney's fees against the husband. The judgments included language that the judgments themselves constituted a lien on the real property that had been the parties' marital residence. The marital residence was titled only in the husband's name and was expressly acknowledged by the court to be the husband's separate property. Eventually, the wife assigned her judgments to a third party who commenced foreclosure proceedings on the property without recording the judgments in accordance with Fla. Stat. § 55.10. The trial court ruled that the unrecorded judgments provided for a lien on the property and allowed the forced sale of the property. But the appellate court reversed, ruling that the language in the judgments themselves did not convert the judgments into liens. Because the wife and her assignee had failed to record the judgments in accordance with Fla. Stat. § 55.10, the appellate court held that there was no lien on the property.

---

[13] *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002).
[14] Debtor also contends that the parties were not given the opportunity to fully argue the issues raised by the Objection at the January 11, 2016 hearing. The Court disagrees. In any event, Debtor's counsel briefed the issues in the Motion and was given full opportunity to present argument at the March 14, 2016 hearing. *See* Transcript, Doc. No. 53.
[15] 777 So. 2d 1055 (Fla. 4th DCA 2001).
[16] 870 So. 2d 239 (Fla. 2d DCA 2004).

*Dyer* is distinguishable from this case; the wife in *Dyer* was not an owner of the property. Rather, she was a mere a judgment creditor—essentially a stranger to the husband's separately owned property—who necessarily was required to comply with Fla. Stat. § 55.10 in order to acquire an interest in the property. Christine, on the other hand, is an owner of the Property and does not need the assistance of Fla. Stat. § 55.10 to acquire an interest in the Property.

In *Butler*, the husband and wife owned real property as tenants in common, with each owning an undivided one-half interest in the property. In their divorce proceeding, the wife obtained and recorded three judgments against the husband. The trial court set a clerk's sale on the husband's 50% tenancy-in-common interest. The appellate court reversed, finding that the judgments were not properly converted to liens against the husband's 50% ownership interest because the wife had not complied with the formalities of Fla. Stat. § 55.10. Like *Dyer*, the wife in *Butler* was essentially a stranger to the husband's separate ownership interest in the property and therefore was required to comply with the formalities of Fla. Stat. § 55.10 in order to obtain a lien against—and force a sale of—the husband's separate interest in the property. *Butler* is distinguishable from the facts of this case; Christine is not attempting to enforce a judgment against Debtor's 50% ownership interest in the Property. Rather, she seeks payment for her own 50% ownership interest in the Property, to which she is entitled under the MSA and the Judgment.

Debtor's reliance on *Dyer* and *Butler*, as well as the applicability of Fla. Stat. § 55.10, is misplaced. The Florida Supreme Court ruled long ago that the purpose of Fla. Stat. § 55.10 is to allow judgment creditors to establish a lien on real property where the lien did not previously exist.[17] The statute sets forth the mechanism for a judgment creditor to obtain a lien on a judgment

---

[17] *Nassau Realty Co. v. City of Jacksonville*, 198 So. 581 (Fla. 1940).

debtor's property. Here, Christine is a record owner of the Property; she does not need the assistance of Fla. Stat. § 55.10 to acquire an interest in the Property.

Debtor also argues that the bankruptcy court's decision in *In re Lowe*[18] supports his motion for reconsideration. In *Lowe,* the debtor sought to avoid his former wife's lien under § 522(f)(1) as a judicial lien that impaired his homestead exemption. The debtor had acquired his homestead prior to the marriage and was the sole title owner of the property. The bankruptcy court found that the parties' final judgment of dissolution of marriage established a judicial lien that impaired the debtor's homestead exemption. As the judicial lien secured the wife's claim for equitable distribution of marital assets (and was not in the nature of alimony, support, or maintenance, such that it was not avoidable under § 522(f)(1)(A)), the court held it was subject to avoidance under § 522(f)(1).

In *Lowe*, the debtor was the sole owner of the subject property. Here, Christine has always been a record title owner of the Property, and her ownership interest in the Property serves as the functional equivalent of a security interest in the Property. Although Christine has executed a quitclaim deed, the deed is held by her own attorney until she receives the Equalizer Payment. Because the deed has not been delivered to Debtor, Christine's claim remains secured by virtue of her ownership of the Property.[19]

---

[18] 250 B.R. 422 (Bankr. M.D. Fla. 2000).
[19] *Mattox v. Mattox*, 777 So. 2d 1041 (Fla. 5th DCA 2001) ("delivery of a deed by the grantor and acceptance by the grantee are essential to transfer title"); *Philippe v. Weiner*, 143 So. 3d 1086 (Fla. 3d DCA 2014) ("a deed takes effect from the date of delivery") (citing *Sweat v. Yates*, 463 So. 2d 306 (Fla. 1st DCA 1984)).

### C. Conclusion

Christine was not required to record the Judgment in accordance with Fla. Stat. § 55.10 to preserve her already-existing ownership interest in the Property. Her claim for the Equalizer Payment is secured by her ownership in the Property. The Court concludes that its *Order Overruling in Part Objection to Claim # 11 of Christine Goesel*, which allowed Christine's claim as secured, is not clear legal error that would result in a manifest injustice.

Accordingly, it is

**ORDERED** that the Motion for Reconsideration is **DENIED**.

Attorney Michael Barnett is directed to serve a copy of this Memorandum opinion on interested parties and to file a proof of service with the Court within three (3) days. The Clerk's Office is also directed to transmit this Memorandum Opinion to the District Court as part of the record on appeal.